

FILED
8/12/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 21 CR 564 |
| v. | |
| KATRINA PIERCE | Judge Virginia M. Kendall |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant KATRINA PIERCE, and her attorney, SEEMA AHMAD, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Plea Agreement have agreed upon the following:

### Charges in this Case

2.     The superseding indictment in this case charges defendant with mail fraud, in violation of Title 18, United States Code, Section 1341 (Counts One, Six, and Seven); wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts Two through Five and Eight through Ten); aggravated identity theft, in violation of Title 18, United States Code, Section 1028A(a)(1) (Counts Eleven through Sixteen); and possession of identification documents, in violation of Title 18, United States Code, Section 1028(a)(4) (Count Seventeen).

3.     Defendant has read the charges against her contained in the superseding indictment, and those charges have been fully explained to her by her attorney.

4.     Defendant fully understands the nature and elements of the crimes with which she has been charged.

## Charges to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding indictment:  Count Three, which charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343; and Count Twelve, which charges defendant with aggravated identity theft, in violation of Title 18, United States Code, Section 1028A(a)(1).  In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.     Defendant will plead guilty because she is in fact guilty of the charges contained in Counts Three and Twelve of the superseding indictment.  In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

## Count Three

During the relevant time:

a.     Defendant was a resident of Chicago, Illinois.

b.     The Coronavirus Aid, Relief, and Economic Security (CARES) Act was a federal law enacted to provide emergency relief to American workers and small businesses suffering from the economic effects of the Coronavirus pandemic.

2

c.     Pursuant to the CARES Act, the U.S. Department of the Treasury provided Economic Impact Payments (so-called "stimulus" payments) to American households. The first stimulus payments were issued in amounts up to $1,200 per adult earning less than $99,000, and $500 per child under the age of 17. These initial stimulus payments were automatic for eligible taxpayers who filed a 2019 federal income tax return. Subsequent stimulus payments were issued in amounts of $600 and $1,400 per adult.

d.     Low- to moderate-income families qualifying for Earned Income Tax Credits and Additional Child Tax Credits could reduce the amount of taxes they owed, while increasing the amounts of their tax refunds, based in part on the number of children in their families.

e.     A representative of a deceased taxpayer could claim a refund due to that deceased taxpayer, for federal income taxes overpaid by or on behalf of the decedent, by filing a form with the Internal Revenue Service (IRS Form 1310), verifying under penalty of perjury that the claim was true, correct, and complete.

f.     The Cook County Clerk's Office was the official keeper of vital records, including records of births and deaths occurring in Chicago.

g.     A relative of a deceased person could request a death certificate from the Clerk's Office by mailing a written application certifying that the requestor is a relative of the decedent and is entitled to the record pursuant to Illinois law; by providing a copy of an identification card; and by paying a processing fee.

3

Alternatively, a requestor could submit an application electronically through a computer system at a neighborhood currency exchange.

Beginning in or about 2019 and continuing until on or about September 14, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant knowingly devised, intended to devise, and participated in a scheme to defraud and to obtain money from the U.S. Treasury by means of materially false and fraudulent pretenses, representations, and promises, as described below.

In connection with her fraud scheme, defendant requested and obtained death certificates from certain government bureaus of vital records, including those of Cook County and Springfield, Illinois, and the States of California, Michigan, Minnesota, Missouri, and North Carolina, so that she could obtain personal identity information of deceased persons and then use that identity information to defraud the federal government. Defendant submitted dozens of fraudulent requests for death certificates to the Cook County Bureau of Vital Records in 2019, at times using currency exchanges to submit those requests electronically, and at other times using the U.S. mail. Defendant submitted requests under her own name and under false names, including "Tracy Scott" and "Tammy Jones." Defendant successfully obtained death certificates from Cook County under false pretenses, that is, by falsely claiming to be a relative (such as a sister or aunt) of the deceased victims.

When law enforcement agents conducted a search of defendant's apartment on September 14, 2021, she was found to be in possession of more than 35 death certificates that had been issued at various times by the States of California, Illinois, Michigan, Minnesota, Missouri, and North Carolina. Defendant knowingly possessed death certificates of other persons with the intent that such documents be used to defraud the United States.

During her scheme, defendant knowingly used stolen identity information of deceased persons to file false and fraudulent income tax returns with the IRS, and to cause false and fraudulent income tax returns to be filed with the IRS, electronically and by mail. Defendant filed false and fraudulent income tax returns under her own name and under the names of other persons whose identity information had been fraudulently obtained by her. Defendant did so with the intent of fraudulently obtaining tax refunds and stimulus payments from the Treasury.

The federal income tax returns filed and caused to be filed by defendant contained materially false information regarding the purported taxpayers' personal information, business information, and income, among other things. Defendant attempted to support the false representations in those income tax returns by attaching, and causing to be attached, certain false schedules and forms, falsely reporting and claiming, among other things, additional income and adjustments to income (Schedule 1); additional taxes (Schedule 2); income and expenses from business (Schedule C); earned income credit (Schedule EIC); self-employment tax

(Schedule SE); additional child tax credit (Schedule 8812); and an IRS Form 1310 (Statement of Person Claiming Refund Due a Deceased Taxpayer). Defendant also attached fabricated birth certificates to income tax returns, and caused fabricated birth certificates to be attached to income tax returns, falsely claiming deceased children as dependents. The false and fraudulent income tax returns filed and caused to be filed by defendant listed accounts that she controlled for purposes of receiving deposits of tax refunds and/or stimulus payments to which she was not entitled.

Defendant electronically transmitted stolen identity information to the IRS for purposes of falsely claiming stimulus payments under false names. In connection with her false stimulus claims, defendant used the names and social security numbers of deceased persons, and an alias name of her own ("Rajona Pierce"), while listing her own home address and deposit accounts that she controlled.

For the purpose of executing the scheme described above, on or about April 27, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, a false and fraudulent U.S. Individual Income Tax Return (IRS Form 1040), for tax year 2019, in her own name, which income tax return was transmitted to the IRS electronically via an interstate network. In that income tax return, defendant falsely claimed to be a "Head of Household," with a deceased boy (Victim 2) listed as a

dependent child, so that she could fraudulently claim certain tax credits and a tax refund to which she was not otherwise entitled.

It is the government's position that the amount of the government's actual loss resulting from defendant's fraud scheme is at least $33,946, and that there is an additional intended loss of at least $11,600, resulting in a combined actual and intended loss total of approximately $45,546. Defendant reserves the right the contest the government's actual and intended loss calculations.

### Count Twelve

On or about April 27, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant knowingly transferred, possessed, and used, and caused to be transferred, possessed, and used, without lawful authority, a means of identification of another person, specifically, the name and social security number of Victim 2, during and in relation to a felony violation, namely, the wire fraud offense described above (Count Three of the superseding indictment).

More specifically, defendant knowingly transferred, possessed, and used the name and social security number of a deceased boy (Victim 2) on her 2019 federal income tax return, falsely claiming Victim 2 as her dependent son, when in fact Victim 2 was not a child of defendant.

### Maximum Statutory Penalties

7. Defendant understands that the charges to which she is pleading guilty carry the following statutory penalties:

7

      a.     Count Three of the superseding indictment carries a maximum term of imprisonment of 20 years, a maximum fine of $250,000, and a maximum term of supervised release of three years.

      b.     Count Twelve of the superseding indictment carries a mandatory two-year term of imprisonment, to be served consecutive to any other sentence imposed by the Court on Count Three. Count Twelve also carries a maximum fine of $250,000 and a maximum term of supervised release of one year.

      c.     Defendant further understands that the Court must order restitution to the United States, one of the victims of the offense in Count Three, in an amount to be determined by the Court.

      d.     Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which she has pleaded guilty, in addition to any other penalty or order of restitution imposed by the Court.

      e.     In sum, the total maximum term of imprisonment is 22 years; the minimum term of imprisonment is two years, to be served consecutively with any other term of imprisonment imposed by the Court; the total maximum fine is $500,000; and the maximum term of supervised release is three years. Defendant also is subject to special assessments totaling $200, in addition to any restitution ordered by the Court.

## Advisory Sentencing Guideline Calculations

8.    Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guideline range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.    For purposes of calculating the Sentencing Guidelines, the parties agree and disagree on the following points:

a.    **Applicable Guidelines.**    The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely, the November 2021 Guidelines Manual.

9

b.    **Offense Level Calculations.**

i.    **Count Three:**

1.    The parties agree that the base offense level is 7 pursuant to Guideline § 2B1.1(a)(1).

2.    It is the government's position that the base offense level should be increased by 6 levels pursuant to Guideline § 2B1.1(b)(1)(D) because the total amount of the actual and intended losses from the offense charged in Count Three (approximately $45,546) is more than $40,000, but not more than $95,000. Defendant reserves the right to contest the amount of the actual and intended loss.

3.    It is the government's position that the offense level should be increased by 2 levels pursuant to Guideline § 2B1.1(b)(2)(A)(i) because the offense and relevant conduct involved more than 10 victims. Defendant reserves the right to contest the applicability of this Guideline enhancement.

4.    It is the government's position that the offense level should be increased by an additional 2 levels pursuant to Guideline § 2B1.1(b)(10)(C) because the offense and relevant conduct involved sophisticated means and defendant intentionally engaged in or caused the conduct constituting sophisticated means. Defendant reserves the right to contest the applicability of this Guideline enhancement.

5.    It is the government's position that the offense level should be increased by an additional 2 levels pursuant to Guideline § 2B1.1(b)(11)

(C)(i) because the offense and relevant conduct involved the unauthorized transfer and use of means of identification (specifically, the names and social security numbers of Victim 3, Victim 4, and others) unlawfully to produce or obtain other means of identification (specifically, debit card accounts and a checking account). Defendant reserves the right to contest the applicability of this Guideline enhancement.

   ii.     **Count Twelve:** The parties agree that, pursuant to Guideline § 2B1.6(a), the Guideline sentence for Count Twelve is 24 months of imprisonment. According to Title 18, United States Code, Section 1028A(b), this 24-month sentence must be imposed to run consecutively to any other term of imprisonment imposed by the Court on Count Three of the superseding indictment.

   iii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

   iv.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting

the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

      c.    **Criminal History Category.** Based on the facts now known to the government and stipulated below, defendant's criminal history points equal 8 and her criminal history category is IV:

      i.    On or about December 15, 1989, in Denver, Colorado, defendant was convicted of shoplifting and sentenced to pay a fine. Under Guideline §§ 4A1.2(e)(2) and (e)(3), defendant receives no criminal history points for this sentence because it was not imposed within ten years of the instant offenses.

      ii.    On or about November 6, 1995, in Denver, Colorado, defendant was convicted of forgery and sentenced to a term of probation. Under Guideline §§ 4A1.2(e)(2) and (e)(3), defendant receives no criminal history points for this sentence because it was not imposed within ten years of the instant offenses.

      iii.    On or about March 22, 2000, in the Superior Court of Buncombe County, North Carolina, defendant was convicted of obtaining property by false pretenses and sentenced to an 8-10 month term of imprisonment (98CRS59241). Under Guideline §§ 4A1.2(e)(2) and (e)(3), defendant receives no criminal history

points for this sentence because it was not imposed within ten years of the instant offenses.

        iv.      On or about March 22, 2000, in the Superior Court of Buncombe County, North Carolina, defendant was convicted of public assistance fraud and sentenced to a 6-8 month term of imprisonment and a term of probation (98CRS62034). Under Guideline §§ 4A1.2(e)(2) and (e)(3), defendant receives no criminal history points for this sentence because it was not imposed within ten years of the instant offenses.

        v.      On or about March 22, 2000, in the Superior Court of Buncombe County, North Carolina, defendant was convicted in 22 consolidated cases of public assistance fraud, food stamp fraud, medical provider fraud, and obtaining identification cards with false birth certificates, for which she was sentenced to a 6-8 month term of imprisonment (98CRS62035). Under Guideline §§ 4A1.2(e)(2) and (e)(3), defendant receives no criminal history points for this sentence because it was not imposed within ten years of the instant offenses.

        vi.      On or about March 22, 2000, in the Superior Court of Buncombe County, North Carolina, defendant was convicted of obtaining property by false pretenses and sentenced to an 8-10 month term of imprisonment (98CRS62038). Under Guideline §§ 4A1.2(e)(2) and (e)(3), defendant receives no criminal history points for this sentence because it was not imposed within ten years of the instant offenses.

vii.     On or about March 22, 2000, in the Superior Court of Buncombe County, North Carolina, defendant was convicted of obtaining property by false pretenses and sentenced to an 8-10 month term of imprisonment (98CRS62097). Under Guideline §§ 4A1.2(e)(2) and (e)(3), defendant receives no criminal history points for this sentence because it was not imposed within ten years of the instant offenses.

viii.     On or about December 1, 2000, in the United States District Court for the Northern District of Iowa, defendant was convicted of social security fraud (one count) and false statements to a government agency (one count) and sentenced to a 12-month term of imprisonment. Under Guideline §§ 4A1.2(e)(2) and (e)(3), defendant receives no criminal history points for this sentence because it was not imposed within ten years of the instant offenses.

ix.     On or about August 26, 2005, in the United States District Court for the Northern District of Illinois, defendant was convicted of false statements and sentenced to an 18-month term of imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives 3 criminal history points for this sentence because it exceeded one year and one month.

x.     On or about August 16, 2012, in the United States District Court for the Northern District of Illinois, defendant was convicted of mail fraud (two counts) and aggravated identity theft (one count) and sentenced to a 132-month term

14

of imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives 3 criminal history points for this sentence because it exceeded one year and one month.

        xi.      Defendant receives an additional 2 criminal history points pursuant to Guideline § 4A1.1(d) because she committed the instant offenses while under a criminal justice sentence, namely, a term of supervised release imposed in the case referenced in subparagraph (x) above.

        d.      **Anticipated Advisory Sentencing Guideline Range.** If the Court adopts the government's Sentencing Guideline calculations as set forth above, then the anticipated offense level total will be 16, which, when combined with the anticipated criminal history category of IV, will result in an anticipated advisory Sentencing Guideline range of 33-41 months of imprisonment, in addition to any term of supervised release, fine, and restitution order the Court may impose. Defendant acknowledges that she is subject to a statutory minimum sentence of two years of imprisonment for the aggravated identity theft offense to which she is pleading guilty (Count Twelve), and that such two-year term of imprisonment must be served consecutively to any other term of imprisonment imposed by the Court for the wire fraud offense to which she also is pleading guilty (Count Three).

        e.      Defendant and her attorney and the government acknowledge that the above Sentencing Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead

the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guideline calculation. Accordingly, the validity of this Plea Agreement is not contingent upon the Probation Office's or the Court's concurrence with the above Sentencing Guideline calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

10.     Both parties expressly acknowledge that this Plea Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11.     Each party is free to recommend whatever sentence it deems appropriate.

16

12.     It is understood by the parties that the Court is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

13.     Regarding restitution, defendant acknowledges that, pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution to the U.S. Treasury in the amount outstanding at the time of sentencing. It is the government's position that the amount of restitution owed by defendant to the U.S. Treasury is $33,946, minus any credit for funds repaid prior to sentencing. Defendant reserves the right to contest the government's restitution calculation.

14.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), she is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect her ability to pay restitution.

15.     Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code,

17

Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

17.     After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the superseding indictment and the original indictment.

### Forfeiture

18.     Defendant understands that by pleading guilty, she will subject to forfeiture to the United States all right, title, and interest that she has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense in Count Three of the superseding indictment.

19.     Defendant agrees to the entry of a personal money judgment representing the amount of proceeds traceable to the offense charged in Count Three. Defendant consents to the immediate entry of a preliminary order of forfeiture setting forth the amount of the personal money judgment that she will be ordered to pay, which amount shall be determined by the Court.

20.     Defendant admits that because the directly forfeitable property is no longer available for forfeiture as described in Title 21, United States Code, Section 853(p)(1), the United States is entitled to seek forfeiture of any other property of defendant, up to the value of the personal money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p)(2).

21.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

22.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

23.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 21 CR 564.

24.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and

cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

25.     Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant.

## Waiver of Rights

26.     Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a.     **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury.  However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random.  Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be

drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

b. **Appellate rights.** Defendant further understands that she is waiving all appellate issues that might have been available if she had exercised her right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

27. Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

28. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Presentence Report and at sentencing shall fully apprise the Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

29. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's

Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the Probation Office. Defendant understands that providing false or incomplete information, or refusing to provide her financial information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and for enhancement of her sentence for obstruction of justice pursuant to Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of court.

30. For the purpose of monitoring defendant's compliance with her obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the tax returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

31. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including

providing financial statements and supporting records as requested by the United States Attorney's Office.

32.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i).     In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant.  Nothing in this paragraph or the preceding paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

### Conclusion

33.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

34.     Defendant understands that her compliance with each part of this Plea Agreement extends throughout the period of her sentence, and failure to abide by any

24

term of the Plea Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Plea Agreement, or defendant breaches any of its terms and the government elects to void the Plea Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

35. Should the Court refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound to it.

36. Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement, to cause defendant to plead guilty.

25

37.    Defendant acknowledges that she has read this Plea Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Plea Agreement.

AGREED THIS DATE: July 20, 2022

JASON YONAN  Digitally signed by JASON YONAN
Date: 2022.07.06 11:13:45 -05'00'
Signed by JASON YONAN on behalf of
the United States Attorney

KATRINA PIERCE
Defendant

BRIAN HAVEY
Assistant United States Attorney

SEEMA AHMAD
Attorney for Defendant

26